IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| EDNA WILLIAMS, | ) | Civil Action No. 3:05-1120-TLW-JRM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |
| | ) | |

This case is before the Court pursuant to Local Rule 83.VII.02, et seq., D.S.C., concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claims for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").

**ADMINISTRATIVE PROCEEDINGS**

On November 18, 1999, Plaintiff applied for SSI and for DIB. Plaintiff's applications were denied initially and on reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). After a hearing held June 14, 2001, at which Plaintiff appeared and testified, the ALJ issued a decision dated November 16, 2001, finding that Plaintiff was disabled as of October 6, 1999. The ALJ found that Plaintiff was not disabled prior to that date because she had the residual functional capacity ("RFC") to perform medium work and thus could perform her past relevant work as a teacher's aide and cook.

Plaintiff was fifty-one years old at the time she was last insured for DIB. She has a tenth grade education and past relevant work as a cook and day care teacher's aide. Plaintiff alleges disability since June 1, 1999,[1] due to hypertension and breast cancer.

The ALJ found (Tr. 22):

1. The claimant met the insured status requirements of the Act on June 1, 1999. The claimant has not performed any substantial gainful activity since then.

2. The medical evidence establishes that prior to October 1999, the claimant had hypertension, mild anxiety, and a right forearm tendinitis, but that she did not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix I, Subpart P, Regulations No. 4.

3. As of October 1999, the residuals from the cancer treatment produced severe fatigue. As of October 1999, she was unable to perform any work activity on a sustained basis.

4. The claimant's allegations of her complete inability to work, prior to October 1999, are not credible and are not supported by the other evidence in the record.

5. Prior to October 1999, the claimant had the residual functional capacity to perform medium work.

6. The claimant's past relevant work as a teacher's aide or cook did not require the performance of work-related activities precluded by the above limitations, and the claimant's impairments did not prevent her from performing her past relevant work at any time on or before October 1999.

7. The claimant has been under a "disability," as defined in the Social Security Act, since October 1999, but not prior thereto (20 CFR 404.1520(f)).

---

[1] Plaintiff originally alleged an onset date of March 15, 1994, but amended it at the hearing to June 1, 1999. See Tr. 18, 28, and 77.

On February 14, 2005, the Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the final action of the Commissioner. Plaintiff filed this action on April 15, 2005.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971) and Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...." See 20 C.F.R. § 404.1505(a) and Blalock v. Richardson, supra.

## DISCUSSION

Beginning in January 1993, Plaintiff received treatment for various impairments (including hypertension, anxiety, and tendinitis) by various medical providers at Andrews Medical Center. Plaintiff was prescribed medication for these conditions. Tr. 276-313. On July 6, 1999 (six days after her date last insured), Plaintiff was examined by Family Nurse Practitioner ("FNP") Lovett at Andrews Medical Center for complaints of some pain from a lump in her right breast with clear drainage. Tr. 287. It was noted that the date of onset was one month and handwritten notes beneath the nurse's note state "1-2m[onths]." Plaintiff was diagnosed with probable mastitis with galactorrhea, for which an antibiotic was prescribed. A mammogram was scheduled for July 8, 1999. Tr. 287-288. The mammogram revealed a large, approximately 7 centimeter ovoid mass in

the upper outer quadrant of her right breast. Tr. 307. A sonogram revealed an approximately 6 cm mixed solid and cystic mass. Based on the clinical history of trauma to the breast, the radiologist believed it was a large hematoma and stated that infection would have to be ruled out clinically. Tr. 308. On September 24, 1999, Plaintiff was examined at Andrews Medical Center and was noted to still have a "very, very large breast mass." She was prescribed an antibiotic and referred to Dr. N. Craig Brackett, III, a surgeon. Tr. 289.

Dr. Brackett scheduled surgery for the mass to be incised and drained. On October 6, 1999, Plaintiff underwent surgery to her right breast, including a biopsy which revealed a Grade III infiltrating ductal carcinoma which involved the skin. Tr. 139-142, 207. Plaintiff underwent four cycles of chemotherapy, a total mastectomy, Taxol chemotherapy, and radiation. See Tr. 151-158, 164-167, 192, 194-196, 237, 248-252.

Plaintiff's treating oncologist, Dr. Mullins, opined that Plaintiff was limited to sedentary work on January 23, 2001. Tr. 232. On January 26, 2001, FNP Lovett of Andrews Medical Center signed a statement in which she opined that Plaintiff was limited to sedentary work. Tr. 317. She also provided the following unsigned statement:

> I saw [Plaintiff] for an office visit on July 6, 1999, at which time she presented to me with a physical problem having to do with her right breast. She stated to me at that time that she had been having this problem for approximately 1-2 months. Due to the severe nature of the problems with her breast, it is my opinion that she would have been limited to sedentary work...in June 1999. She had uncontrolled high blood pressure in June 1999, as well as a continuing problem with anxiety and depression.

Tr. 316. Dr. Julian Mason, FNP Lovett's supervisor, signed a statement that Ms. Lovett was out on maternity leave, but he had reviewed the record and agreed with Ms. Lovett's above conclusions. Id.

At issue in this action is whether Plaintiff was disabled on or before June 30, 1999, her last date insured.[2] Plaintiff alleges that: (1) the ALJ erred in inferring an onset date without the consultation of a medical advisor pursuant to Social Security Ruling ("SSR") 83-20; (2) the ALJ failed to give controlling weight to the opinion of Plaintiff's treating providers FNP Lovett and Dr. Julian Mason; (3) the ALJ failed to make specific function-by-function findings regarding Plaintiff's RFC; (4) substantial evidence does not support the ALJ's determination that Plaintiff could perform medium work from June 1 to October 6, 1999; and (5) the ALJ erred in evaluating Plaintiff's credibility.

A.   Substantial Evidence

Plaintiff alleges that the ALJ's determination that she could perform medium[3] work from June 30 to October 6, 1999 is not supported by substantial evidence. In particular, she alleges that the ALJ failed to make specific function-by function findings concerning her RFC and the ALJ erred in inferring an onset date without consultation of a medical advisor. The Commissioner contends that substantial evidence supports the ALJ's decision that Plaintiff was capable of performing medium work prior to the expiration of her DIB insured status.

Substantial evidence is:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence

---

[2] Since the onset date of disability in the ALJ's decision was three months after the expiration of Plaintiff's insured status, she was ineligible to receive DIB. Although the ALJ appears to have awarded SSI in the decision (see Tr. 21-22), Agency records at some point indicated that Plaintiff's household income exceeded SSI eligibility limits, rendering Plaintiff ineligible for SSI as well. See Tr. 343.

[3] Medium work is defined as involving lifting up to fifty pounds at a time with frequent lifting or carrying of objects weighing up to twenty-five pounds. If someone can do medium work, it is also determined that he or she can also do sedentary and light work. 20 C.F.R. § 404.1567(c).

> but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence".

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

The ALJ's determination that Plaintiff could perform medium work from June 30 to October 6, 1999 is not supported by substantial evidence. Review of the ALJ's decision fails to reveal how the ALJ determined that Plaintiff had the RFC for medium work. The ALJ found that prior to October 1999, Plaintiff had hypertension, mild anxiety, and right forearm tendinitis. Tr. 22. There is no indication, however, whether the ALJ determined if these were "severe" or "non-severe" impairments.[4] Thus, it appears that the ALJ failed to complete the sequential evaluation step at stage

---

[4] It is the claimant's burden to show that he had a severe impairment. See Bowen v. Yuckert, 482 U.S. 137, 145 n. 5 (1987). A non-severe impairment is defined as one that does not "significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). "Basic work activities" means:
> The abilities and aptitudes necessary to do most jobs. Examples of these include --
> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b). An impairment is "not severe" or insignificant only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984).

two.[5] Assuming that the ALJ found that these were severe impairments, it is unclear why the ALJ has not determined what, if any, effect these severe impairments would have on Plaintiff's RFC.

The Commissioner does not specifically address Plaintiff's argument concerning SSR 96-8p,[6] but merely contends that the ALJ essentially found that Plaintiff's hypertension, mild anxiety, and right forearm tendinitis were severe (although the Commissioner admits this was not clearly expressed in the decision), but the impairments could have been found non-severe because the record does not contain functional limitations. The Commissioner appears to argue that there was a lack of contemporaneous evidence in the record of any restrictions, such that the ALJ's determination should be supported. Defendant's Brief at 16-17.

The Commissioner's argument that the impairments could have been found non-severe by the ALJ does not appear to be supported by substantial evidence. Although the ALJ, in the "Evaluation of the Evidence and Rational" section of the decision, states that Plaintiff had "well-controlled" hypertension, there are numerous notations in the medical record of blood pressure readings that were high. Although there are a number of times when Plaintiff's blood pressure was reportedly in the "normal" range, there are also numerous readings of elevated blood pressure. On

---

[5]In evaluating whether a claimant is entitled to disability insurance benefits, the ALJ must follow the five-step sequential evaluation of disability set forth in the Social Security regulations. See 20 C.F.R. § 404.1520. The ALJ must consider whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to her past work, and (5) if not, whether the claimant retains the capacity to perform specific jobs that exist in significant numbers in the national economy. See id.

[6]SSR 96-8P provides:
The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

7

January 25, 1993, Plaintiff's blood pressure was 160/94. Plaintiff was noted to be noncompliant with her medication and Procardia XL was resumed. Tr. 276. On January 31, 1994, Plaintiff's blood pressure was 188/110. Plaintiff reportedly had stopped taking her prescribed medication because it made her nauseated and gave her a headache. She was given a prescription for a different medication. Tr. 278. On February 14, 1994, it was noted that Plaintiff's hypertension was under fair, but not optimal control. Additional medication was prescribed. Plaintiff's blood pressure medication was changed in March 1994. Tr. 278. On April 2, 1996, Plaintiff's blood pressure was 162/79. Tr. 281. Her blood pressure was 156/90 on June 25, 1997. Tr. 284. On July 22, 1997, Plaintiff's blood pressure was 148/80. In December 1998, Plaintiff's blood pressure was 187/88. Tr. 286. Here blood pressure was 209/98 on July 6, 1999. Tr. 287.

     Plaintiff was prescribed Tranxene for her anxiety beginning in 1994. Tr. 276-277. After her date last insured, Plaintiff underwent consultative examinations with Dr. Marshall Staton, a psychiatrist. On April 17, 2000, Plaintiff reported to Dr. Staton that her nervous problems began six or seven years prior. Dr. Staton found a marked constriction of interest and restriction of Plaintiff's activities, a minor impairment in her ability to relate, and a moderate impairment of her ability to attend and to persist to completion of task. Dr. Staton diagnosed Plaintiff with anxiety disorder, dysthymic disorder, adjustment disorder with mixed emotional features, and probable borderline intelligence. Tr. 162. Dr. Staton examined Plaintiff again on October 13, 2000. Plaintiff again stated that her nervous problems started six or seven years prior to the examination. He noted that Plaintiff became anxious and depressed without obvious reason about six years prior, she became more anxious and depressed after the diagnosis of breast cancer in July 1999, she was in the midst of chemotherapy when Dr. Staton saw her in April, and she did not seem to be any better

emotionally in October than she was in April. Dr. Staton diagnosed Plaintiff with anxiety disorder, dysthymic disorder, adjustment disorder with mixed emotional features, and probable borderline intelligence. Tr. 169-170.

In August 1994, Plaintiff reported some tenderness in her right thumb with swelling and stiffness, which was diagnosed as probable tenosynovitis. Tr. 279. On September 11, 1995, Plaintiff complained of intermittent problems with her right forearm and thumb. She stated that she had a splint at home, but did not use it. Dr. K. Huback's examination revealed that Plaintiff had tenderness in her right hand and elbow with full range of motion. Probable tendinitis was diagnosed. Tr. 280.

The ALJ's determination that Plaintiff could perform medium work prior to October 6, 1999 is not supported by the opinions of Plaintiff's treating physician and treating FNP,[7] who opined that

---

[7]Although it is not binding on the Commissioner, a treating physician's opinion is entitled to great weight and may be disregarded only if persuasive contradictory evidence exists to rebut it. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1988), and Foster v. Heckler, 780 F.2d 1125, 1130 (4th Cir. 1986). In those cases, the court emphasized the importance of giving great weight to the findings of the plaintiff's treating physician. See also Mitchell v. Schweiker, 699 F.2d 185 (4th Cir. 1983). The court in Mitchell also explained that a treating physician's opinion should be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." An ALJ, therefore, must explain his reasons for disregarding a positive opinion of a treating physician that a claimant is disabled. DeLoatche v. Heckler, 715 F.2d 148 (4th Cir. 1983).

The Commissioner is authorized to give controlling weight to the treating source's opinion if it is not inconsistent with substantial evidence in the case record and it is well supported by clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1527(d)(2). The Court in Craig found by negative implication that if the physician's opinion "is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 589.

The ALJ discounted Dr. Mason's opinion that Plaintiff only had the RFC for sedentary work as inconsistent with the evidence, including that she sought no medical attention for her breast lump until after her date last insured. Plaintiff, however, testified that she found the lump in her breast in June 1999. Tr. 32. Although the lump was not diagnosed as cancer until October 1999, it is

(continued...)

Plaintiff was limited to sedentary work.[8] The ALJ's decision is also not supported by the findings of the State agency medical consultant who, although he mistakenly used the last date insured of December 31, 1999,[9] found that Plaintiff was limited to light work (see Tr. 220-229 ). See 20 C.F.R. §§ 404.1527(f)(2) and 416.927(f)(2); SSR 96-6p ("Findings of fact made by State agency ... [physicians ]... regarding the nature and severity of an individual's impairments must be treated as expert opinion of non-examining sources at the [ALJ] and Appeals Council level of administrative review.").

Plaintiff also alleges that the ALJ erred by not obtaining testimony from a medical expert in accordance with Social Security Ruling ("SSR") 83-20. This Ruling provides:

> In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at the disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the

---

[7](...continued)
unclear that the condition did not exist prior to that time. The ALJ also discounted Dr. Mason's opinion based on the ALJ's conclusion that Plaintiff's hypertension was well controlled, her anxiety was mild, and she only complained of tendinitis off and on. As discussed above, however, the ALJ did not even determine if these impairments were severe and he appears to have ignored some of the evidence, especially concerning Plaintiff's hypertension.

[8]The parties appear to agree that if the ALJ accepted the opinions of Dr. Mason and Ms. Lovett that Plaintiff could perform only sedentary work as of June 1999, the Medical-Vocational Guidelines (Grids) at Rule 201.10 (claimant closely approaching advanced age with a limited or less education and skilled or semi-skilled skills that were not transferable) would have directed a finding that Plaintiff was "disabled" at that time. See Defendant's Brief at 6, n. 7; Plaintiff's Brief at 20.

[9]The record contains conflicting information about Plaintiff's date last insured. Throughout much of the record, it was listed as December 31, 1999. The ALJ determined, however, that the correct date last insured was June 30, 1999. Tr. 18. The Commissioner states that the Agency computer records and Agency personnel confirm that June 30, 1999 is the correct date last insured. Defendant's Brief at 3, n. 2.

>administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred.

SSR 83-20. The Commissioner has not address this allegation, except to argue that establishing an onset date prior to June 30, 1999 would be inconsistent with medical evidence showing hypertension under control when Plaintiff took medication and anxiety, right arm/hand problems requiring little treatments, and (seemingly ignoring Dr. Mason's opinion) a lack of functional limitations by Plaintiff's treating physicians. Here, it may be necessary to obtain the testimony from a medical expert to determine whether Plaintiff's impairments were disabling prior to her date last insured.

    B.    <u>Credibility</u>

Plaintiff alleges that substantial evidence does not exist to support the ALJ's finding that Plaintiff's testimony was less than fully credible. At the hearing, Plaintiff testified that she quit working in March 1994 because her nerves were bad and she could not get her hypertension under control. Tr. 32. She also reported having problems with her right arm (she is right handed) prior to her mastectomy. Tr. 32-33, 45. Additionally, Plaintiff testified that the lump and discharge from her breast existed prior to her appointment with Andrews Medical Center on July 6, 1999. Tr. 45. Plaintiff testified that she found the lump in her breast in June 1999. Tr. 32. The Commissioner contends that the ALJ properly evaluated Plaintiff's subjective complaints.

In assessing credibility and complaints of pain, the ALJ must: (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a plaintiff's subjective complaints of pain, along with all of the evidence in the record. <u>See</u> <u>Craig v. Chater</u>, 76 F.3d 585, 591-92 (4th Cir. 1996); <u>Mickles v. Shalala</u>, 29 F.3d 918 (4th Cir. 1994). Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain

itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

Here, the ALJ did not properly consider all of the medical and non-medical evidence in finding that Plaintiff was not credible. Instead, the ALJ stated that Plaintiff's allegations of disability prior to 1999 were not credible because Plaintiff merely wanted to stop working when she stopped in March 1994; she asked her doctor for an excuse to take a couple of weeks off, which he refused; she did not file for benefits until November 1999 when she became weak and tired due to chemotherapy; and although her cancer probably predated the time it was found in July 1999, she was asymptomatic except for some tenderness. Tr. 21. Review of Plaintiff's medical records indicates that she complained of anxiety and nervousness on March 7, 1994, and that she requested an excuse from her physician to take a couple of weeks off work for blood pressure control. Plaintiff's blood pressure was elevated at 178/110 on that date, despite her having taken her prescribed medications. The medical care provider wrote:

> I don't think a week or two out of work will make any difference, she can take the time off if she wants but I am not going to give her an excuse for it.

Tr. 278. Plaintiff's medications were changed and on March 28, 1994, Plaintiff's blood pressure had decreased to 136/84. Plaintiff reported her anxiety was better and her healthcare provider noted that Plaintiff had taken time off work and reportedly felt better because of the break. Tr. 278.

## CONCLUSION

The Commissioner's decision is not supported by substantial evidence. This action should be remanded to the Commissioner to determine which of Plaintiff's impairments, if any, were severe and to properly determine Plaintiff's RFC prior to her last date insured. In doing so, the Commissioner should properly consider the opinion of Plaintiff's treating physician and properly consider Plaintiff's pain and credibility. If necessary, the Commissioner should obtain testimony from a medical advisor.

RECOMMENDED that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. §§ 405(g) and 1383(c)(3) and that the case be remanded to the Commissioner for further administrative action as set out above.

Respectfully submitted,

s/Joseph R. McCrorey
United States Magistrate Judge

August 23, 2006
Columbia, South Carolina